All right, the next case is 522-0173 People v. Cecil, Sutherland. If the council want to approach their respective spots, that would be great. Okay, Ms. Thompson. When you're ready. Thank you. May it please the Court and Council, my name is Julie Thompson, here from the Office of the State Appellate Defender, representing Cecil Sutherland in the direct appeal of the dismissal of his post-conviction petition at the second stage. Mr. Sutherland was convicted after a retrial for the murder of Amy Schultz that was committed in 1987. This case has been going on, obviously, for quite some time now. All of the state's evidence against Mr. Sutherland was circumstantial, and according to the Illinois Supreme Court, not one piece of that evidence was singularly compelling. The state relied on circumstantial scientific evidence, being human and dog hair, clothing and car fiber, tire tracks, and mitochondrial DNA from the victim, Mr. Sutherland's dog, to connect Mr. Sutherland to the crime scene. Trial counsel, rather than focusing his defense efforts on the links between Mr. Sutherland and the crime scene, promised the jury that he would prove beyond all doubt that William Willis, the step-grandfather of the victim, was the actual murderer. The trial court erred when it granted the state's motion to dismiss the amended petition because the petition was sufficient to require an evidentiary hearing. Counsel alleged ineffective assistance by trial counsel and raised numerous failures by trial counsel to attack the validity of the state's evidence and proper impeachment or cross of the state's witnesses likely would have made a significant difference in the outcome of the trial. We're going to start with the dog mitochondrial DNA evidence. The state introduced mitochondrial DNA evidence taken from Mr. Sutherland's dog, a black Labrador retriever named Babe, that would not have been introduced under today's scientific standards and should not have been introduced at Mr. Sutherland's trial. Trial counsel did not challenge the admissibility of the dog mitochondrial DNA evidence, even though there were decisions from both Texas and Washington refusing its admission because there was no scientific validity to mitochondrial DNA testing on dogs for forensic purposes. Mr. Sutherland's trial was the first time that mitochondrial DNA dog evidence was used in Illinois, and the state's expert, Dr. Halverson, testified that dog hair found on the victim's clothing was a mitochondrial DNA match to Babe. The same Dr. Halverson subsequently wrote an article acknowledging that the formula she used for computing the statistical frequency of Mr. Sutherland's dog mitochondrial DNA sequence was incorrect. And that article was attached by counsel to the amended petition. There were additional articles attached by counsel to the amended petition by different authors, also affirming the scientific journal articles affirm the statistics used to link Babe to the dog hair found on the victim's clothing have been rejected by the scientific community. Due process is violated when a conviction is predicated on what new scientific evidence is proven to be fundamentally unreliable expert testimony. Counsel's trial, trial counsel's failure here to challenge that mitochondrial dog DNA evidence placed, allowed the state to argue that Mr. Sutherland's dog had contact with the victim hair. What does the doctrine of invited error have to do with ineffective assistance of counsel? I mean, could you argue invited error precludes review? The state didn't in response to our position, Your Honor, that invited error occurred here. And I think that the fundamentally the question becomes, is it invited error or is it ineffective assistance of counsel? I think you could. Potentially you could. Here, I think it's ineffective because as we go through this, this is not the one and only issue that we have here with counsel's trial practice here. And this is a record that's over 24,000 pages long. So we are limited in what we obviously can argue here to the court today. I tried to choose the items that I thought were the most significant. And I think the dog DNA evidence is probably the first thing that leaps out at me as just should never have been admitted at trial. Do you think a fry hearing should have been? They actually did have a fry hearing on this. And the trial court was convinced because counsel conceded. The trial court was convinced that the DNA evidence should be allowed. There was a fry hearing. Yes. But you're arguing ineffective assistance. Because counsel did not oppose the admission at the fry hearing. Well, who requested the fry hearing? The state. Because it was the first time ever that myocardial DNA for dogs was being admitted in Illinois. I believe the state actually requested the fry hearing. They wanted the court to authorize the use of that testimony at trial. So your argument is that the defense counsel didn't object even though there was an attempt at a foundational evidence? Yes. When the state brought that fry hearing asking the court to allow this testimony, counsel agreed with the admission of this evidence rather than opposing it. Even though we had cases both from Washington and Texas that refused the admissibility. And now we have evidence that the expert herself has acknowledged that her statistical analysis was inaccurate with regard to the validity of the evidence. The next thing that I wanted to raise to you is the tire track evidence. The admitted petition shows that trial counsel's failure to cross-examine the state's tire witnesses about the letter that he wrote saying that Mr. Sutherland's car tires were too big to have left the tracks at the scene of the crime was error that allowed the state to argue that Mr. Sutherland's car was at the crime scene. What happened is that Mark Thomas from Cooper Tire Company sent a letter to investigators in 1987, the year in which the crime occurred, in which he clearly stated that the tire impressions left at the murder scene was left by a 14-inch tire. Thomas testified at trial 17 years later in 2004 that those tire impressions left at the crime scene was left by a 15-inch tire. Trial counsel did not cross-examine Thomas about his change of opinion, despite the fact that a 14-inch tire track excluded Mr. Sutherland's Plymouth Fury from having been at the scene because it requires a 15-inch tire. The petition also includes a search result from the Michigan State Police Crime Lab's database showing that Mr. Sutherland's 1977 Plymouth Fury was excluded from the list of 97 possible vehicles that could have left the tire tracks at the murder scene based on the word that was used. Finally, trial counsel failed to use a report from the state's toolmark examiner who found a gash on one tire warranting investigation that could have corroborated defense witness testimony that Mr. Sutherland's car tires were changed before he drove to Montana. And that investigation was canceled by investigators as not necessary. The amended petition shows trial counsel failed to challenge the state's tire track evidence with available contradictory evidence, and by doing so, counsel allowed the state to argue that the tire tracks were changed. But it was Mr. Sutherland's car that left a tire impression at the crime scene when the evidence tells us maybe it was not. Trial counsel should have cross-examined the state's hair and fiber expert, Ken Knight, with his own lab reports that contradicted his trial testimony. The petition includes Knight's lab notes regarding the head hair found on the victim, her clothing, and the transport sheet. Knight determined all but one or two of the examined hairs were microscopically consistent with the victim's hair standards, and none were consistent with Mr. Sutherland's. However, Knight's lab notes conflicted with his testimony, and counsel didn't cross-examine with regard to that. Knight's notes described 12 unknown head hairs as having been forcibly removed, 10 of which are gray-brown, 2 of which are gray-blonde. Even though Knight never described any of the victim's hair or Mr. Sutherland's hair as gray-brown or gray-blonde. Counsel didn't cross-examine Knight about the presence of forcibly removed hair on the victim and her clothing that did not belong to either the victim or Mr. Sutherland, even though forcibly removed means pulled out by the roots, which would happen if someone is struggling for her life. Trial counsel failed to cross-examine Knight about the fact that over 40% of the hair found on the victim did not belong to the victim or to Mr. Sutherland. Counsel also did not cross-examine Knight about discrepancies between his trial testimony and his lab reports regarding Mr. Sutherland's pubic hair samples. Knight testified that Mr. Sutherland's pubic hair samples were consistent with two hairs that were removed from the victim. However, Knight's lab reports contradicted his testimony at trial because his testimony at trial differed in its description of the pubic hair compared to his testimony. Mr. Sutherland's pubic hair, I'm sorry, counsel also failed to cross-examine Knight about two additional expert reports that examined Mr. Sutherland's pubic hair samples and described a different number of samples with sizes and colors different than what Knight described and different from each other. So we have three different experts looking at these pubic hair samples, giving three different reports about three different numbers of the standards, colors and sizes. But who were the experts? Knight was the expert for the state? Yes, Knight was the expert for the state. The other two were also experts for the state. I did not note their names, but they were state's experts as well. But we have their reports in the... Yes. There was fiber evidence found that was also questionable, although not questioned by trial counsel the way it should have been. The fiber evidence was from his car? Fiber evidence from the car, yes, Your Honor. Upholstery and carpet fighting that was allegedly found on the victim and her clothing. One of the issues that we have with this is that Knight testified he found a gold nylon fiber on the victim's shirt. It was consistent with the upholstery on Mr. Sutherland's car. However, when you go look at Knight's original reports about his review of the fibers pulled from the victim's clothing, he makes no mention of a gold fiber. The gold fiber isn't found until almost a year later after Mr. Sutherland's car is located. And counsel, again, failed to cross-examine. My time is up, Your Honors. Our position is that trial counsel just missed a lot of things that should have been dealt with here. Mr. Sutherland is serving natural life in prison, and he is asking this court only for a third-stage evidentiary hearing on these issues that could have affected the outcome of his trial. Thank you. I know that you exceeded the time, and you did mention earlier there are many issues. Can you speak just a moment about your contention as to the error concerning possible other perpetrator, Willis? Our issue with Willis is simply this, Your Honor. The trial counsel, first I've promised the jury I'm going to prove him guilty beyond a reasonable doubt, which is just unheard of for trial counsel to do. He set a burden for himself that the defense never bears, in any case ever. And then he failed miserably to do it. Now, the State argues, well, the defense put on 86 witnesses. Yes, they did. They put on 86 witnesses, and that's a lot of witnesses. Quantity over quality doesn't matter here. The quality of the witnesses that he introduced to prove Willis guilty did not prove Willis guilty. And when counsel set this up, and he started with this theory, he already knew that Willis's hair did not match, Willis's shoe sizes did not match, Willis did not have a vehicle that would match the fibers or the tire tracks. I'm sorry, I was looking more at the overall. Overall, our position is simply this. Counsel spent all his time trying to prove Willis guilty instead of spending his time focused on the scientific links that connected Mr. Sutherland to the crime scene, and that's where his focus should have been. Is that the answer? No, thank you. You'll have a few moments after Ms. O'Connell argues. Ms. O'Connell, State? Yes. May it please the Court, Counsel, and Assistant Attorney General Erin O'Connell, on behalf of the people. I'll start where opposing counsel left off and talk about counsel's overall approach in this case. It's a mischaracterization of the record to say that counsel solely focused on Willis. Counsel certainly made strenuous efforts to implicate Willis and provide an alternative suspect. But counsel also presented a number of independent experts on the very issues that petitioner is arguing about today. So counsel did present his own expert on fiber comparison analysis, Randall Bressey, who testified, I think, multiple days. And his overall approach to Kenneth Knight was not to get into the notes, as counsel has noted, but instead to criticize the enterprise that Knight undertook is inherently subjective. So this Court has to carefully look at everything that counsel did in this case and determine if the overall performance was ineffective. On cross-examination, this Court has to look at the overall approach to cross-examination of particular witnesses. The question is not could counsel have asked an additional question. Certainly with the benefit of hindsight and unlimited time after trial, there will turn out to be additional issues that counsel could have explored. But the question is, looking from counsel's perspective at the time of the trial, was counsel's approach a reasonable one? And here it was. And counsel did offer the Willis theory. He did make an ill-advised statement in opening statements that he would prove beyond a reasonable doubt. I think the jury understood this as a rhetorical flourish. Counsel was prone to that type of statement throughout the trial. And in closing arguments, you know, the State argued, we assume the burden. We have to prove our case beyond a reasonable doubt and reoriented the jury to ensure that that promise was not prejudicial. And, of course, the jury was properly instructed. Counsel also made clear in his own closing argument that the jury didn't have to believe the Willis theory to acquit. That was just one of multiple ways that counsel was attempting to introduce reasonable doubt into this case. And counsel was in a difficult position because of the sheer volume of the State's evidence in this case. I think counsel noted we have tens of thousands of pages of record here. The State's case was very heavy on expert testimony. It was weeks of sort of dense expert testimony. And counsel had to do his best to come up with a strategy that would appeal to the jury and would provide them some basis for finding there may have been an alternate perpetrator besides his client. Petitioner has failed to show deficient performance when viewed as under the overall performance standard. Petitioner has also failed to show prejudice. He has to make a substantial showing on both prongs. It's certainly true, as the Illinois Supreme Court said, that no single piece of evidence was the linchpin here in this case. But it was the meticulous weaving together of all of the various pieces of evidence that was in its totality overwhelming in its collective force. We have evidence that Petitioner was available at the time of the murder. He lived very near to the victim at the time. He has no solid alibi for his whereabouts at that time. He was seen at a gas station about an hour after the victim was likely dumped at the dump site. And he acted suspiciously when he was stopped by a police officer. This is just the circumstantial evidence on top of the evidence of the fibers. And it was fibers that were not only from Petitioner's car that were found on the victim's clothing, but threads of the victim's homemade shorts were found in Petitioner's car. So as one of the experts explained, it's a cross-transfer of fibers. And that is extremely compelling evidence that shows that two pieces of fabric were in contact with each other, where you see the fabric from one, the threads from one item and vice versa. So we did have that here. That's in addition to the dog care evidence. But what do you have to say about the dog care evidence, the fact that it was probably not admissible? I disagree that it's not admissible. I think the only question at the FRI hearing is general acceptance. It's not about the methodology employed by a particular expert. It's generally accepted in the scientific community, though. Exactly. That's correct. And so the state presented two witnesses who both testified that it was generally accepted in the relevant field. I would also note that this was mitochondrial DNA. The court had already held a previous FRI hearing on human mitochondrial DNA. So the court had already found that the mitochondrial DNA methodology was generally accepted. And then that was extended to the dog care evidence through the second FRI hearing. Nothing that Petitioner has produced would have rendered it inadmissible. It would have gone to the weight rather than the admissibility of the evidence. And I would just note the small role that the dog care evidence played in this case, given the pubic hair evidence on the victim's prepubescent body that was linked to Petitioner. There's no question that the human mitochondrial DNA was generally accepted in the relevant field. And that was also microscopically consistent with Petitioner's pubic hair. There was also the fabric that I've already previously described, the cross-transfers. There was defendant's behavior after this incident where he fled to Montana and abandoned his car that was used in the offense. And he didn't say a word to his mother, said he was going to work and just disappeared. He certainly demonstrated a consciousness of guilt and appeared to be engaged in flight. And it was his car that was really what demonstrated his connection to the crime. The car that he abandoned in Montana and just left with, I think, a note saying, I don't want this anymore, really just linked him in so many ways to the murder because of the gold fibers that were discussed in the testimony. Why isn't the defendant entitled to a third stage in hearing on the ineffective assistance? So the question is whether defendant's allegations in the petition, if proven, would entitle him to relief. We're not making any argument against the allegations. But where you're raising a claim of ineffective assistance of counsel, it all has to be viewed in the overall context of the trial. So the court has to take account of that, of all the transcripts, and consider whether there was a reasonable probability of a different result. Here, and I think the Illinois Supreme Court in People v. Agee kind of laid out how this should be done at the second stage. Because their counsel was alleged to be ineffective for not pursuing an insanity defense or a mindset-related defense, and the court carefully considered all the trial testimony to determine whether that had any chance of success. So you're saying that because there was no chance of success, there's no reason to go any further in this case? Exactly, yes. He has to show a substantial showing of prejudice at this stage to warrant evidentiary hearing. And in light of all of the evidence at trial taken together, he can't make that showing. So I think I've covered everything based on opposing counsel's argument. If the court has no questions, we would ask that this court affirm the judgment. No, thank you. Okay. Thank you. Ms. Johnson, rebuttal? I think I have two things that I wanted to discuss with you after hearing counsel's argument. The first is the idea that Mr. Sutherland fled from Illinois to Montana. I dispute that. And I think the record here will actually show that Mr. Sutherland is an individual who spends a few years in a place and then vanishes, and spends a few years in a place and then vanishes. That had been his history until 1987 when this crime occurred. The offense occurred on July 1 of 87. Mr. Sutherland left for Montana sometime in the fall of 1987. He did not immediately flee town, showing a consciousness of guilt. When his vehicle was found, it was found at Glacier National Park in Montana. It was abandoned because it was out of gas and he had no money. That's what happened. So his vehicle was found, was recovered, seized by the police, brought back to Illinois and searched. There is no consciousness of guilt evidence against Mr. Sutherland because he did not flee. Counsel argues that we have to make a substantial showing of a likelihood, we fail to make a substantial showing of a constitutional violation. And what the law says here is that the petitioner's allegations of fact should be liberally construed in favor of the petitioner and in light of the original trial record, and the state's motion to dismiss should be denied unless there is a substantial showing of a constitutional violation. When we look at what does it mean to make a substantial showing of a constitutional violation, it is less than a preponderance of the evidence. And I apologize, I do not have that case site with me, but it is in our brief. Less than a preponderance of the evidence is a substantial showing for purposes of second stage dismissal on a post-conviction petition. Mr. Sutherland has made a substantial showing. The state talks about a big pile of circumstantial evidence, and they do have a large pile of circumstantial evidence. But when you look at the issues that counsel raised in that post-conviction petition, and you start to see the problems with that pile of evidence, and you start to pick off those pieces that have problems, the state's not left with much. And I don't know that they're left with enough that they could actually prove him guilty if they went to trial on what would be left after this petition was heard. Mr. Sutherland has raised a substantial showing. He has proved by a preponderance of the evidence that these allegations should go to a third stage evidentiary hearing. That's all he seeks from this Court today. Thank you. Thank you both. I just wanted to say good luck on your retirement. Thank you. I was going to say counsel doesn't know that Ms. Thompson has appeared in court in front of me for almost 19 years. And some weeks almost every day. So you've always done a good job, and I appreciate it. Thank you. Good luck on your retirement, sir. It's well earned. Okay, thank you both for your arguments here today.